```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA          :
                                  :
                                  :
        V.                        :
                                  :    Criminal No. 2:04-CR-93
SAMUEL HERBIN, and                :
SHANNON SMITH,                    :
                                  :
        Defendants                :


## MEMORANDUM OPINION AND ORDER

Defendants Samuel Herbin and Shannon Smith filed a number of pretrial motions in April 2005. Herbin filed motions (1) to suppress identification, (2) to suppress evidence from execution of a search warrant, (3) to suppress statements prior to Miranda warnings, (4) to dismiss for violation of the Speedy Trial Act, and (5) in limine. Smith filed motions to (1) dismiss for lack of speedy trial, (2) suppress evidence and (3) suppress statements regarding his identity. The motions were the subject of hearings in August and September.

A.  Samuel Herbin Motions

    1.  Motion to Suppress Identification

Herbin objects to the procedure used by law enforcement officials of showing four individuals single photographs of him for purposes of identification. He argues the procedure was unduly suggestive and impermissibly tainted any potential in-court identification.

The Court addressed this same issue in <u>United States v.</u>

Alexander, 923 F.Supp. 617 (D. Vt. 1996).  There, the Court applied a two-prong analysis established under United States v. Kwong, to determine whether an in-court identification violates due process.  United States v. Kwong, 69 F.3d 663 (2d Cir. 1995).  First, the Court must determine if the identification procedure is impermissibly suggestive and if so, the question becomes whether any in court identification is independently reliable or whether it has been tainted by the suggestive photographic display.  United States v. Tortora, 30 F.3d 334, 337 (2d Cir. 1994).  To make that analysis, the Court in Alexander reviewed both the suggestive procedures but also the degree of familiarity the witness had with the defendant.  Alexander, 923 F. Supp. at 625.

In Alexander, both witnesses had been participants in a conspiracy, had purchased drugs from the Defendants over an extended period of time and had sold drugs for the Defendants.  Both appeared to be certain of their identification.  Id.  The Court determined that "the extensive contact that the witnesses had with the Defendants over a period of several months makes any in-court identification independently reliable."  Id.  Clearly, the more contact a witness has had with the defendant, the greater the likelihood that an in court identification is independently reliable.

In the instant case, the testimony of three persons, Oliver Washington, Rachel Early and Jamie Lysterbourgh, is at issue. Washington has apparently known Herbin for years, both in New

2

York and Vermont.  Herbin took over Washington's lease at 12 Baker Street in Burlington, admitted to living at the residence for five months, and at that time, had been identified as Washington's cousin.  Early testified at the hearing that Herbin and Smith frequently used her apartment.  She had extensive contact with both defendants and unequivocally identified them in court.  The third witness, Jamie Lysterbourgh, was not available at the hearing.  As to Washington and Early, even assuming the single photographic display was unduly suggestive, their extensive contact with the defendant provided a reliable, independent basis for an in-court identification.  The motion to suppress as to their in-court identification is therefore denied.  The Court will address any in-court identification provided by witness Lysterbourgh at the time of trial.

    2.   Motion to Suppress Evidence Seized Pursuant to Search Warrant

Magistrate Judge Niedermeier signed a search warrant on March 31, 2004 authorizing law enforcement agents to conduct a search of an apartment at 12 Baker Street in Essex.  Execution of the warrant yielded cocaine base, baking soda, and a firearm, all of which the government seeks to introduce at trial.  The warrant was based upon an affidavit of DEA Task Force Agent Michael Warren.  The affidavit included a detailed and lengthy description of a conspiracy to distribute crack cocaine involving a number of individuals, including Oliver Washington, David Farnham, Robert Valgean and Garfield Richards, from September 2003 to March 30, 2004.  Various residences were used during the

course of the conspiracy.  According to the affidavit, Washington and Farnham rented 12 Baker Street prior to March 17, 2004.  Farnham told an investigator in December 2003 that Washington had used 12 Baker Street as a stash house for crack cocaine.  Agents had information from other informants that the residence was used by Washington as a stash house for crack cocaine.  Agents observed co-conspirators visit the residence as late as during the week of March 15, 2004.  A citizen also told agents on March 24 that the residence was being used to distribute crack cocaine.

Oliver Washington transferred the lease hold to the apartment at 12 Baker Street to his "cousin," Defendant Samuel Herbin, on March 17, 2004.  On March 29, 2004, police stopped a vehicle in which Herbin was a passenger for a traffic violation.  Herbin told police he had been living at 12 Baker Street for the past five months, a period of time well within the conspiracy.

Probable cause to support a search warrant requires a showing of "a fair probability" that contraband or evidence of a crime will be found.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Whether an affidavit supporting a search warrant establishes probable cause must be judged by the "totality of circumstances."  Id. at 238-41.  Substantial deference is given to the determination of an independent magistrate judge in the assessment of probable cause to support a warrant.  United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993).  To uphold a warrant, a court need only find "that the magistrate had a 'substantial basis for . . . concluding' that probable cause

existed." Illinois v. Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271,(1960)).

The magistrate judge must make a "practical, common-sense" determination whether, under the totality of circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. Provided the magistrate judge had a substantial basis for finding probable cause to issue the warrant, his or her decision will be sustained. Id., at 236. Moreover, even if this Court were to find that the magistrate judge lacked a substantial basis to find probable cause, suppression is an inappropriate remedy for evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant. "The exclusionary rule barring illegally obtained evidence from the courtroom does not apply to evidence seized in "objectively reasonable" reliance on a warrant issued by a detached and neutral magistrate, even where the warrant is subsequently deemed invalid." United States v. Snape, 116 Fed. Appx. 317, 320 (2004), citing United States v. Leon , 468 U.S. 897, 922 (1984).

The Court agrees with Judge Niedermeier that the affidavit established probable cause to believe evidence of drug activity existed within the apartment at 12 Baker Street. The alleged conspiracy existed over a number of months during which the apartment was utilized as a stash house. The tenant prior to March 17 was one of the major co-conspirators. Complaints of drug activity at the residence continued after transfer of the

lease hold to Herbin.  Other co-conspirators were observed visiting the residence in March.  More importantly, Herbin indicated to police on March 29 he had been in the residence for five months, suggesting he was present during a significant part of the conspiracy.  Under a totality of the circumstances standard, there was a reasonable basis for the magistrate judge to find probable cause.

Alternatively, law enforcement agents had an "objectively reasonable" belief that probable cause existed under United States v. Leon's good faith exception.  The parties disagree as to the relevance of the review by an Assistant United States Attorney and to the lack of questions by the Magistrate Judge when he reviewed the affidavit.  Assistant United States Attorney Conroy reviewed and approved the Warren affidavit, and Magistrate Judge Niedermeier had no questions prior to approval of the warrant.  Approval of the affidavit by an Assistant United States Attorney is relevant as part of the totality of the circumstances analysis of the good faith exception.  In this case, however, this factor is not dispositive, since there is absolutely no evidence to suggest the officers who executed the warrant did not have an objectively reasonable view that probable cause supported the warrant.[1]

For the reasons cited above, the motion to suppress evidence obtained in execution of the warrant is denied.

---

[1] The Magistrate Judge's silence is immaterial in establishing good faith reliance.  See United States v. Turner, 713 F. Supp. 714, 724 (D. Vt. 1989).

3. Motion to Suppress Statement Prior to Miranda Warnings

a. Statements made to Agent Richardson

DEA agents arrested Herbin in New York in June 2004.  DEA Agent Richardson transported Herbin to the Federal Courthouse soon after his arrest.  Agent Richardson asked Herbin for his name and address.  Herbin then volunteered a number of statements, including that Washington invited him to Vermont to attend a party and asked him to sign a lease agreement at 12 Baker Street in Essex, that Herbin did not live there and that Washington paid him money to sign the lease.  Those statements were not in response to any questions asked by DEA agents.

Miranda protections only extend to custodial interrogations. United States v. Mitchell, 966 F.2d 92 (2d Cir. 1992).  While Herbin was clearly in custody at the time of his arrest, custodial interrogation can only arise when there is both "custody" and "interrogation."  Cruz v. Miller, 255 F.3d 77 (2d Cir. 2001) (citing New York v. Quarles, 467 U.S. 649, 664 (1984) (O'Connor, J., concurring in part and dissenting in part, noting that both custody and interrogation are required for "custodial interrogation")).  An accused's volunteered statements that were not elicited from custodial interrogation are not barred by the Fifth Amendment.  Rhode Island v. Innis, 446 U.S. 291, 299-302 (1980).  Because Herbin's statements were volunteered, they were not the product of custodial interrogation.  The motion to suppress statements made to Agents Richardson is therefore denied.

b. Statements to Agents Colon and Byrd

The government also seeks to introduce a set of statements allegedly made on June 14, 2004. DEA Agents Toby Byrd and Camille Colon transported Herbin from a state correctional facility in the Bronx, New York to the Metropolitan Detention Center in Brooklyn prior to his appearance in federal court. Both agents testified that Agent Byrd advised Herbin of his Miranda rights as soon as they got in the transport vehicle. Agent Colon insisted Herbin respond verbally to his understanding of the various Miranda rights. Herbin indicated he understood his rights. Although Herbin denied being advised of his rights in the vehicle, he did testify at the hearing that he fully understood his Miranda rights. Agent Byrd did not ask whether Herbin was willing to formally waive his rights.

Under Miranda v. Arizona, police may not interrogate a suspect who has been taken into custody without first warning the suspect "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." 384 U.S. 436, 479 (1966). "If a suspect is not so warned, the prosecution is barred from using statements obtained during the interrogation to establish its case in chief." United States v. Newton, 369 F.3d 659, 668 (2d Cir. 2004). However, "no talismanic incantation" is required to satisfy the requirements of Miranda. California v. Prysock, 453

U.S. 355, 359 (1981).  The Miranda court stated that "[the] warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant."  Miranda, 384 U.S., at 476.  See also Rhode Island v. Innis, 446 U.S. 291, 297 (1980)(noting that Miranda announced procedural safeguards including "the now familiar Miranda warnings . . . or their equivalent").

Here, Agent Byrd insisted that he advised Herbin of his Miranda rights as soon as they got into the transport vehicle.  Even if Agent Byrd did not recite Miranda's precise incantation, Herbin testified that he understood his rights at the time that he was in custody.

Agent Byrd did not formally ask whether Herbin waived his Miranda rights.  The validity of a waiver of constitutional rights is to be determined by consideration of the totality of circumstances surrounding the waiver. North Carolina v. Butler, 441 U.S. 369, 374 (1979).  Miranda established that mere silence is not enough to constitute waiver, however, "[t]hat does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights." Id. at 373.  "Factors to be considered by courts in weighing issues regarding voluntary and knowing waivers of Fifth Amendment rights include personal characteristics of the defendant and the conduct of the police in eliciting the waiver."

9

United States v. Lopez, 1995 U.S. Dist. LEXIS 19875 (D. Vt. Dec. 18, 1995).

Even if a defendant does not waive his Miranda rights a court must only order the suppression of statements that are elicited during custodial interrogation, as an accused's volunteered statements that were not elicited from custodial interrogation are not barred by the Fifth Amendment.  Rhode Island v. Innis, 446 U.S. 291, 299-302 (1980).  Courts have determined that no custodial interrogation occurs when the defendant himself initiates the conversation with law enforcement officers.  In United State v. Colon, statements were not suppressed when the defendant clearly refused to waive his Miranda rights, but then initiated a conversation in which he "was not questioned, confronted with evidence, or even encouraged to be honest and tell the facts." Colon, 835 F.2d 27, 30 (2d Cir. 1987).  See also, Edwards v. Arizona, 451 U.S. 477, 485 (1981)(having invoked right to counsel, defendant was not subject to further interrogation until counsel had been made available to him, unless he himself initiated further communication, exchanges, or conversations with police).

Agent Byrd testified that Herbin understood his Miranda rights and was willing to waive them.  Moreover, it was Herbin who initiated the conversation with the agents by asking about the nature of the charges.  Hence, the Court finds that Herbin was advised of his Miranda rights and that he waived those rights when he initiated the conversation with the DEA agents.

Even if this Court did not find an effective waiver of <u>Miranda</u>, however, Herbin's statements to Agents Colon and Byrd are admissible because the exchange between Herbin and the agents did not constitute custodial interrogation.  Herbin was in custody, but was not being interrogated because Herbin himself initiated the conversation when he requested information about the charges against him.

Furthermore, although Herbin's testimony at the hearing was internally inconsistent as he described the agents' questions, he said that the agent initially told him the charges had something to do with drugs and an apartment in Vermont.  That lack of distilled knowledge of the facts of the case by the agents, together the implied question by Herbin, do corroborate the agents' version of the events.  Later in the hearing, Herbin described a more thorough questioning and knowledge of the facts of the case, namely that the agents confronted him on his nickname and his connections to Oliver Washington.  There is little to suggest that the agents knew much about the facts of the case.

The Court finds that <u>Miranda</u> warnings were administered, that Herbin effectively waived those rights, and that his subsequent statements are admissible.  For the reasons stated above, Herbin's Motion to Suppress Statements made to Agents Colon and Byrd is denied.

    4.  Motion in Limine

Herbin seeks to exclude a 1994 conviction for first degree

11

assault in Queens County, New York.  He served approximately four years in prison as a result of this conviction and was released approximately seven years ago.  He argues that the probative value of the conviction is substantially outweighed by its prejudicial effect.

Herbin is charged with possession of a firearm by a convicted felon.  Subject to certain limitations, 18 U.S.C. § 922(g)(1) prohibits possession of a firearm by anyone with a prior felony conviction, which the Government can prove by introducing a record of judgment or similar evidence identifying the previous offense.  Old Chief v. United States, 519 U.S. 172, 174 (1981).  The existence of the felony conviction is an element of the offense, and without a stipulation proving the existence of the conviction, the government must be able to prove the felony record.  United States v. Gilliam, 994 F.2d 97, 102 (1993).

Herbin seeks to exclude the felony conviction that gave rise to the gun possession charge.  He not only seeks to exclude evidence of the conviction, which might include prejudicial details, but the existence of the conviction itself.  The government, however, must be able to prove the prior offense as an essential element of the charge.  Absent a stipulation to the existence of a felony conviction, the motion in limine is denied.

Herbin may offer to stipulate to the existence of the prior offense, but he has yet to do so.  If such an agreement is reached, the Court will review Herbin's arguments for exclusion

of the conviction at the time of trial if Herbin chooses to testify.

    5.   Motion to Dismiss

Herbin has moved to dismiss, arguing that the seventy day speedy trial period has expired.

Herbin was arraigned on a three count indictment on July 2, 2004. Defense counsel requested a 90 day period for review of discovery and the filing of pretrial motions. Judge Niedermeier granted the extended period and ordered the speedy trial clock be tolled pursuant to 18 U.S.C. § 3161(h)(8)(A). Herbin did not object to the order. On October 28, 2004, a superseding indictment was filed adding defendants Smith and Sasso. Herbin was arraigned on the superseding indictment on November 18, 2004, during which he requested an additional ninety days for filing motions and expressly agreed to an interest of justice exclusion under 18 U.S.C. § 3161(h)(8). The motions deadline was extended for ninety days.

On January 31, 2005, co-defendants Smith and Sasso appeared for arraignment. Counsel for these defendants requested 60 days for filing motions. The Court granted that period and, in the interest of justice, tolled the speedy trial clock to April 1, 2005. That extension applied to Herbin pursuant to 18 U.S.C. § 3161(h)(7). A Second Superseding Indictment was filed on March 10, 2005. Arraignment was held on March 21, 2005 at which the motions deadline was extended to April 15. Again the Court tolled the speedy trial clock to April 15 pursuant to 18 U.S.C. §

13

3161(h)(8).  Herbin and Smith then filed motions to suppress on April 14 and 19, 2005, respectively.

Herbin claims the following periods of time were not excludable under the Speedy Trial Act:  (1) October 3-29, 2004, or 27 days; (2) February 19-March 10, 2005, or 20 days; and (3) April 15-June 3, 2005, or 49 days.

Herbin's motion hinges upon the running of the speedy trial clock between April 15 to June 3.  Herbin and Smith both filed motions to suppress and dismiss in April 2005.  Section 3161(h)(1)(F) excludes periods from the filing of pretrial motions to a hearing on those motions.  The Supreme Court in Henderson v. United States, 476 U.S. 321(1986) held that pretrial motions toll the speedy trial clock until the hearing has been completed and the motion is under advisement, irrespective of whether that delay is unnecessarily extended. 476 U.S. at 330 (1986).  See also United States v. Matsushita, 794 F.2d 46, 51 (2d Cir. 1986)(stating that any time consumed between filing of pretrial motion and conclusion of the hearing on that motion is excludable without regard to reasonableness of length of time). A defendant having made a motion cannot complain if its disposition is not expeditious; all the time consumed in deciding the motion is attributable to the defendant.  United States v. Gambino, 59 F.3d 353, 359 (2d Cir. 1995).

Here, the hearings on these motions were completed on September 9, 2005.  All memoranda were due ten days after the hearing.  Pursuant to Section 3161(h)(1)(J), the tolling of the

14

period of delay can be extended up to 30 days while the matter is under advisement.  As a result, the speedy trial clock was tolled by the filing of motions on April 14, 2005 and remained tolled until the date of this Order.  Even if the other periods in dispute are not tolled, less than 70 days have elapsed and the motion must therefore be denied.[2]

B.  Shannon Smith

  1.  Motion to Suppress

Smith filed a Motion to Suppress evidence seized at 12 Baker Street during the execution of the search warrant.  He and Herbin raised identical concerns regarding the validity of the warrant.  The Court denies the motion for the same reasons spelled out in denying co-defendant Herbin's motion.

  2.  Motion to Suppress Statements

Smith seeks to suppress statements concerning his identity made to law enforcement agents at the time of his arrest.  Agent Estes of the Northern Vermont Drug Task Force participated in Smith's arrest.  After the defendant was handcuffed, Estes asked Smith for his name.  Smith responded "Joey Hernandez."  Smith made the same representation as to his identity during the booking process.  Estes asked no further questions.

The Second Circuit in United States v. Adegbite, 846 F.2d 834 (2d Cir. 1988) held that solicitation of the identity of a

---

[2] The Court finds that the periods October 3-29, 2005 and February 19-March 10, 2005 are tolled as well.  Defense counsel agreed to resetting the speedy trial clock.  The latter period is excludable pursuant to 18 U.S.C. § 3161(h)(7), since Herbin's case had been joined with co-defendants whose period had not run.

suspect does not amount to custodial interrogation.  More recently the Second Circuit has held that the "collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest ... does not ordinarily implicate the prophylactic protections of Miranda, which are designed to protect a suspect only during investigative custodial interrogation." Rosa v. McCray, 396 F.3d 210, 221(2d Cir. 2005)

In the instant case, Agent Estes's question related only to the defendant's identity and therefore did not constitute custodial interrogation.  The motion is therefore denied.

Smith also seeks to suppress a statement concerning ownership of money.  The government does not intend to introduce the statement in its case in chief.  Therefore the motion is denied as moot.  The government must notify the court and the defense of its intention to attempt to introduce the statement prior to its introduction.

3.  Motion to Dismiss Under Speedy Trial Act

Smith moves to dismiss the indictment pursuant to 18 U.S.C. § 3161(c)(1).  He asserts the government has failed to bring his case to trial within 70 non-excludable days from the beginning of the speedy trial clock and that dismissal is therefore mandated.

Smith was first charged with one count of violating 21 U.S.C. § 841(a)(1) in a criminal complaint filed on April 1, 2004.  The government filed a notice of dismissal on April 30, 2004, and the matter was then dismissed.

A Superseding Indictment was filed on October 28, 2004 in which Smith was added to the current indictment.  Smith was in state custody at that time.  He appeared for arraignment on these charges on January 31, 2005 and entered not guilty pleas.  Initially counsel requested 90 days for the filing of motions, but changed the request to 60 days.  Magistrate Judge Niedermeier set April 1, 2005 as the motions filing deadline.  Pursuant to Local Rule 16.1. the Court tolled the running of the speedy trial clock to April 1 pursuant to 18 U.S.C. § 3161(h)(8), finding that such a delay served the ends of justice by permitting the defense additional time for the review of discovery and the consideration of pretrial motions.  Defense counsel had requested an enlarged period for the review of discovery and did not object to the tolling of the statute.

A Second Superseding Indictment was filed on March 10, 2005 in which an additional count was added against Defendant Herbin.  Arraignment was held on March 21.  A new pretrial order extended the motions filing deadline to April 15, 2005.  Motions to suppress were filed by Defendant Smith on April 14 and by Defendant Herbin on April 19.  The government was permitted to extend time for filing responses to the motions to May 18 without objection from the defense.  A third Superseding Indictment was filed June 2, 2005 adding two new counts.  Smith then filed the instant motion to dismiss.

The speedy trial clock began to run on the date of Smith's arraignment, January 31, 2005.  18 U.S.C. § 3161(c)(1).  Smith's

counsel asked for an extended period for the review of discovery and the filing of motions.  Implicit within the request for 60 days for discovery and the filing of motions was an understanding that, pursuant to the local rules, the speedy trial clock would be tolled for that period.  Upon granting that request, Judge Niedermeier tolled the statute in the interest of justice pursuant to 18 U.S.C. § 3161(h)(8), finding that the extended period was necessary for defense counsel to adequately prepare for trial.  Defense counsel never objected to the tolling of the speedy trial period, but waited for a seventy day period to expire before filing an objection.  The period from the arraignment until April 1, 2005 and extended to April 15, 2005 is excluded pursuant to Section 3161(h)(8).

    Smith acknowledges, as he must, that the speedy trial clock is tolled upon the filing of a suppression motion.  See 18 U.S.C. 3161(h)(1)(F).  However, he argues the clock must be restarted thirty days after the filing of pre-trial memoranda.  In the instant case, all memoranda were filed by May 18.  There is no support for Smith's argument, either within the Speedy Trial Act or in relevant case law.  Rather, Section 3161(h)(1)(F) excludes any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  Nothing within the statute permits restarting the clock thirty days after the filing of memoranda.  In <u>Henderson v. United States</u>, 476 U.S. 321 (1986), the Supreme Court held that the Speedy Trial Act

exclusion by the filing of pretrial motions is not limited to reasonably necessary delays, but extends to all delays to completion of the hearing.  That period of delay is then extended up to an additional thirty days while the issue is under advisement pursuant to 18 U.S.C. 3161(h)(1)(J).

The Court addressed Smith's Motion to Dismiss on September 9, 2005.  The parties were given an additional ten days to file post-hearing memoranda.  Once those memoranda are filed, the Court has no more than 30 days to issue a ruling prior to the clock beginning to run.  The speedy trial clock remains tolled until the Court rules on all motions or thirty days from the filing of the memoranda, whichever occurs first.

For the reasons stated above, the speedy trial clock has been tolled from the date of the arraignment until the Court's ruling on all pending motions thirty days from the filing of post-hearing memoranda.  The motion to dismiss is therefore denied.

Dated at Burlington, Vermont this 25th day of October, 2005.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge