```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT
```

United States of America         :
                                 :
     v.                          :    File No. 1:04-cr-00093-jgm-2
                                 :
Shannon Smith                    :

OPINION AND ORDER
(Doc. 334)

Shannon Smith, proceeding *pro se*, has filed a motion for writ of habeas corpus under 28 U.S.C. § 2255.  In 2005, Smith was charged in a six-count indictment with various drug and firearm offenses.  He was ultimately convicted on five of the six counts and is currently incarcerated.  He now claims both his trial and appellate counsel provided him constitutionally deficient representation.  For the reasons set forth below, Smith's motion for writ of habeas corpus is DENIED.

I.   Background

In June 2005, Smith was charged in a third superseding indictment with conspiracy to distribute 50 grams or more of cocaine base (Count 1); maintaining an apartment for the purpose of distributing cocaine base (Count 2); possession with intent to distribute cocaine base (Count 4); making a materially false statement in a matter within the jurisdiction of the United States Drug Enforcement Administration (Count 5); being a felon in possession of a firearm (Count 6); and possession of a firearm in furtherance of a drug trafficking crime (Count 8).  (Doc. 60.)

The case proceeded to a jury trial.  On the third day of trial, Smith's co-defendant, Samuel Herbin, physically attacked his attorney in the presence of jurors while they were returning from a recess.  Both defendants moved for a mistrial.  The Court granted Herbin's counsel's motion to withdraw and granted Herbin a mistrial.  The Court then presented a series of questions to the jurors, drafted by Smith's counsel, asking if they could be "totally fair in [their] consideration of Mr. Smith's case?"  (Doc. 336-6 at 26-28.)  Satisfied with the jury's responses, the Court denied Smith's motion for a mistrial, gave a cautionary instruction, and continued with the trial.

As noted above, the jury ultimately convicted Smith on five of the six charges, acquitting him of possession of a firearm in furtherance of a drug trafficking crime (Count 8).  Prior to sentencing, Smith's attorney asked the Court to note the disparities in the sentences for crack cocaine (the "cocaine base" cited in the indictment) versus powder cocaine offenses under the United States Sentencing Guidelines and, in light of these disparities, to consider sentencing Smith under the Guideline for powder cocaine.  The Court conceded that it was "inappropriate that the penalties are a hundred times more for crack than they are for powder," but rejected Smith's request on the basis that the disparities represented "what Congress has said should apply."  (Doc. 292 at 2) (citing Special App. 136).

Applying the Guidelines, the Court sentenced Smith to concurrent terms of 188 months in prison on Counts 1, 2 and 4, 60 months on Count 5, and 120 months on Count 6.  All terms were to be served concurrently.  The Court also imposed a five-year term of supervised release and a $500 special assessment.

Smith appealed his conviction and sentence to the Second Circuit.  As to his conviction, Smith argued (1) that the proceedings in his case violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and (2) that the Court incorrectly denied his motion for a mistrial.  With regard to his sentence, Smith contended that it was "'unreasonable because it failed to take into account the effect of the disparity in sentences between crack and powder cocaine.'" (Doc. 292) (quoting Appellant's Br. [Doc. 336-4] 39-40).

While Smith's appeal was pending, the United States Supreme Court decided Kimbrough v. United States, 552 U.S. 85 (2007) and Gall v. United States, 552 U.S. 552 U.S. 38 (2007).  These cases established that the Sentencing Guidelines are advisory, and a sentencing court may "tailor the sentence in light of other statutory concerns as well."  Kimbrough, 552 U.S. at 101; see also Gall, 552 U.S. at 46.  Upon request of the Second Circuit, the parties submitted supplemental briefing and agreed the case should be remanded for re-sentencing.  In a Summary Order, the Second Circuit ruled that Smith's Speedy Trial Act and

mistrial claims were "entirely without merit," and remanded the case for re-sentencing.  (Doc. 292.)

On April 17, 2009, the Court re-sentenced Smith to concurrent terms of 120 months in prison on Counts 1, 2, 4 and 6 and 60 months on Count 5, a five-year term of supervised release, and a $500 special assessment.

Smith filed this § 2255 motion on April 13, 2010.  He raises a series of ineffective assistance of counsel claims against trial and appellate counsel.  The government opposes the motion.

II.  Discussion

A person in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States, or the court was without jurisdiction to impose such a sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986).  Claims of ineffective assistance of counsel, when raised in a § 2255 motion, are not barred for failure to raise them on direct appeal.  See Massaro v. United States, 538 U.S. 500, 504 (2003).

In Strickland v. Washington, the Supreme Court established a two-part test to determine whether defense counsel's assistance

was ineffective.  466 U.S. 668, 687 (1984).  First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms."  Id. at 688-89.  Second, the defendant must show that he suffered prejudice as a result of defense counsel's deficient performance.  See id. at 693.  Prejudice is established where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

    A.    Counsel's Mistrial Arguments

Smith's first claim is that trial counsel did not argue vigorously enough for a mistrial.  The record does not support his clam.

Smith was represented at trial by Attorney Bradley Stetler.  After Herbin's assault on his attorney, Attorney Stetler moved for a mistrial on Smith's behalf.

> If I might, Judge, I'm going to join Mr. Davis's motion for mistrial on the basis of what he had said earlier. I mean, this was a very, this was a visual assault right in front of the jurors, and it's clear that this jury is not going to be able to put that out of its mind when it's considering the evidence in this case. Mr. Smith is charged as a co-defendant with Mr. Herbin. They're theoretically living together, and now we have the co-defendant acting with such violence in the courtroom. There is really no way he can get, that is, Mr. Smith, can get a fair trial just as Mr. Herbin can't get a fair trial.

>. . .
>
>And, if I could add, the Marshals had to engage in some, had to engage in some protection to the, of the jurors.  I mean, the ones who were in the room were brought out under the protection of the Marshals because of the actions of one of the two co-defendants.  Mr. Herbin can't probably go forward with his trial . . . .  It doesn't make any sense to continue with Mr. Smith's trial either, especially given the potential well of prejudice against him.

(Doc. 336-6 at 3-5.)  When the Court noted that it was considering asking the jurors if they had been prejudiced with regard to Smith, Attorney Stetler suggested "a voir dire of each of the jurors individually to know what they saw and what their feelings are . . . ."  (Id. at 5.)  Attorney Stetler added, "I've been doing this for 25 years, and I've never seen anything like it, and I just can't -- my instincts tell me this is just impossible to give this guy a fair trial."  (Id. at 6.)

The Court granted a 90-minute recess so the parties could research the mistrial issue, and to allow Attorney Stetler to draft questions to be presented to the jury.  The Court subsequently asked the jurors Attorney Stetler's questions, and on the basis of the responses, denied his motion for a mistrial.  The Court also gave a cautionary instruction.

Smith argues Attorney Stetler should have raised additional arguments in support of the motion for a mistrial.  Specifically, he contends counsel should have argued that: the dismissal of Herbin disrupted the defense strategy; the jury was unfairly

6

prejudiced; the Court's cautionary instruction to the jury was ineffective; and Herbin's dismissal enabled the government to "to split one conspiracy into two prosecutions, which is not allowed . . . ."  (Doc. 334 at 4.)

Smith offers no specific facts to support his trial strategy claim.  Indeed, he has not identified any witnesses or other evidence that could have been presented but were not because of Herbin's removal from the case.  As to the Court's instruction, "[a]s a general rule, a cautionary instruction advising the jury not to allow a disruptive co-defendant's behavior to impact the decision regarding other defendants affords sufficient protection against undue prejudice."  United States v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996) (citing United States v. Marshall, 458 U.S. 446, 448-52 (2d Cir. 1972).  Accordingly, counsel was not ineffective for failing to object to the Court's instruction.

Smith's argument about "splitting" a conspiracy claim is misplaced.  Although it is not entirely clear from his filings, Smith appears to be referencing the premise that "a single conspiracy cannot be split up for the purpose of prosecution." United States v. Cohen, 197 F.2d 26, 29 (3d Cir. 1952); see also Braverman v. United States, 317 U.S. 49, 63 (1942).  This theory, developed under the Double Jeopardy Clause, applies to "successive indictments against a single defendant for participation in a single conspiracy . . . ."  United States v.

Rigas, 605 F.3d 194, 212 (3d Cir. 2010).  It does not prevent multiple defendants from being tried, either together or separately, for participation in the same conspiracy.  Therefore, Smith's first claim that counsel's arguments in favor of a mistrial were constitutionally deficient are without merit.

    B.    <u>Failure to Challenge Indictment</u>

Smith next contends the government "failed to charge a specific felony 'type'" and thus "created prejudice by not allowing the jury to return a specific drug type finding as to the charges . . . ."  (Doc. 334 at 5.)  Smith appears to be arguing that the third superseding indictment did not identify the drug in question as crack cocaine.  Correspondingly, he argues, the jury did not return a verdict with regard to crack cocaine, and the Court should not have sentenced him for a crime involving that type of drug.  He further claims that the defect was jurisdictional and should have been raised both at trial and on appeal.

The third superseding indictment used the term "cocaine base."  (Doc. 60.)  The government correctly argues that "cocaine base" is the relevant statutory term.  <u>See</u> 21 U.S.C. § 841(b)(1)(A)(iii).  The Second Circuit has held that in using the term "cocaine base," Congress intended to include "cocaine in the form commonly referred to as 'crack' or 'rock' cocaine."  <u>See</u> <u>United States v. Jackson</u>, 968 F.2d 158, 162 (2d Cir. 1992),

superseded by statute on other grounds.[1]  Furthermore, it is plain from the record that the drugs were identified at trial as crack cocaine on numerous occasions.  (Doc. 209 at 50, 60, 61, 64, 117, 118.)  "Thus, there was no vagueness in the crime as applied to [the defendant], and no objective unreasonableness in counsel's failure to seek a Guidelines calculation based on powder cocaine."  United States v. Colon, 2010 WL 4910134, at *2 (2d Cir. Dec. 3, 2010) (citing United States v. Stephenson, 183 F.3d 110, 118 (2d Cir. 1999)); cf. United States v. Smith, 272 F. App'x 41, 43 (2d Cir. 2008) (district court's finding that cocaine base for which defendant was convicted was crack cocaine for purpose of sentencing "was not clearly erroneous as there was sufficient testimony at trial that the substance at issue was crack cocaine").  Smith is therefore unable to show either unreasonable conduct by counsel, or prejudice because of the use of the term "cocaine base" in the indictment.

    C.   Failure to Call Detective Cazzaza

Smith next contends that Attorney Stetler erred when he failed to call New York State Detective David Cazzaza as a witness.  He argues that Detective Cazzaza would have offered

---

[1] The United States Supreme Court recently granted certiorari to determine whether the phrase "cocaine base" in Title 21 of the United States Code refers to every form of cocaine that is classified chemically as a base, or whether it refers only to the substance commonly referred to as "crack" cocaine.  See United States v. DePierre, 599 F.3d 25 (1st Cir.), cert. granted, 131 S. Ct. 458 (2010).

evidence "clearly beneficial to the defense," including testimony that Smith was "not involved with Oliver Washington et. al." (Doc. 334 at 6.)  Attorney Stetler responds in an affidavit that "I do not believe there were any witnesses available who had competent, relevant testimony helpful to the defense and who should have been called as witnesses for the defense."  (Doc. 336-5 at 1.)

"Courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury. 'The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.'" Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)); see also Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003) ("A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that we are reluctant to disturb.").  In fact, a decision not to call an exculpatory witness "is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000); see also Dupont v. United States, 224 F. App'x 80, 82 (2d Cir. 2007) (finding that even if alibi evidence did exist, "the trial attorney's decision not to call the purported alibi witnesses was a reasonable tactical decision").

Here, Smith offers no evidence to show that Attorney Stetler's decision was anything but tactical.  Nor does he argue that if Detective Cazazza had been called to testify, there is "a reasonable probability" the outcome at trial would have been different.  Strickland, 466 U.S. at 694.  Indeed, Smith does not address the other evidence introduced against him, including the testimony of multiple witnesses about his role in drug-related activities.  Therefore, Smith's claims of ineffective assistance are without merit.

D.   Failure to Impeach Witnesses

Smith argues that Attorney Stetler failed to properly impeach the government's witnesses.  He claims Attorney Stetler should have used statements to the grand jury and law enforcement officers' written reports to point out inconsistencies.  Smith does not identify any specific inconsistent statements.  Attorney Stetler responds that he "used all available means to impeach government witnesses."  (Doc. 336-5 at 1.)

The Second Circuit has repeatedly held that "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987), cert. denied, 484 U.S. 1061 (1988); accord Eze v. Senkowski, 321 F.3d 110, 127 (2d Cir. 2003) ("'The conduct of examination and cross-examination is entrusted to the judgment of the lawyer . .

. .'" (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)).  Here, without specific examples of inconsistent statements, and with no reference to specific witnesses, the Court cannot critique Attorney Stetler's performance to determine whether it fell below constitutional standards.  Instead, the Court will apply the usual deference to Attorney Stetler's decisions, and accept his statement that all available tools for impeachment were used at trial.

     E.   Improper Testimony in Grand Jury Proceeding

Smith argues that both trial and appellate counsel should have moved to dismiss the indictment because "inflammatory prejudicial evidence" was introduced in the grand jury proceeding.  That evidence allegedly revealed information from a separate grand jury proceeding in the State of New York.  Smith claims that because of this evidence, the grand jury indicted him, in part, "to get him off the streets."  (Doc. 334 at 7.)  He also claims law enforcement officers "leaked" to a government witness "still secret" information about murder investigations in New York, thus causing the witness to fear for her safety.

It is highly questionable whether a motion to dismiss the indictment would have been successful, as the dismissal of an indictment is warranted only in exceptional circumstances.  United States v. Brown, 602 F.2d 1073, 1077 (2d Cir.), cert. denied, 444 U.S. 952 (1979).  In general, extreme acts of

prosecutorial misconduct must be demonstrated before an indictment will be dismissed.  See, e.g., United States v. Williams, 504 U.S. 36, 46-47 (1992) (dismissal appropriate only where misconduct amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions") (citations omitted); United States v. Hogan, 712 F.2d 757, 761-62 (2d Cir. 1983) (indictment dismissed where prosecutor's "flagrant and unconscionable" acts included the extensive presentation to the grand jury of false and misleading testimony, misleading and speculative hearsay, speculative and unsupported allegations of other criminal conduct).

Here, the allegation is that a police detective spoke about grand jury proceedings in another state.  There is no allegation these statements were false, misleading or speculative, or that they were anticipated and condoned by the prosecution.  Furthermore, Smith's ultimate conviction demonstrates there was sufficient proof, even absent Detective Cazzaza's allegedly inflammatory statements, to convict him on the charges set forth in the indictment.  Cf. United States v. Mechanik, 475 U.S. 66, 70 (1985) (conviction by a jury renders harmless any error in the grand jury proceeding).  Consequently, Smith has failed to

establish either unreasonable conduct by counsel, or prejudice arising out of the grand jury proceedings.

As to the alleged statements to a government witness about Smith's criminal history, there is again no allegation these statements were false or misleading.  Nor is there any claim the ultimate testimony of the witness was impacted in any way.  The Court therefore finds these claims about grand jury evidence are without merit.

    F.    <u>Failure to Petition for Writ of Certiorari</u>

Smith's final claim is that his appellate attorney, Attorney Marsha Taubenhaus, was ineffective for failing to petition the Supreme Court for a writ of certiorari, or to move the Second Circuit for reconsideration, rehearing, or rehearing *en banc*.

The Second Circuit has held that a defendant has "no constitutional right to the assistance of counsel in preparing a certiorari petition."  <u>Pena v. United States</u>, 534 F.3d 92, 96 (2d Cir. 2008) (affirming denial of § 2255 motion where defendant argued counsel should have petitioned for writ of certiorari and informed him of his right to do so).  As the court noted in <u>Pena</u>, "[w]hile the Supreme Court has interpreted the Constitution to provide criminal defendants the right to appointed counsel on first-tier appeals, including permissive ones, the Court has not found the right to exist with respect to certiorari review and other discretionary appeals."  <u>Id.</u> at 94-95 (citing <u>Halbert v.</u>

Michigan, 545 U.S. 605, 610 (2005); Murray v. Giarratano, 492 U.S. 1, 10 (1989); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Ross v. Moffitt, 417 U.S. 600, 610 (1974)).  This same analysis applies to requests for reconsideration or rehearing, including rehearing *en banc*.  See, e.g., Prousalis v. United States, 2007 WL 2438422, at *14 (S.D.N.Y. Aug. 24, 2007).

Because "the right to effective assistance of counsel is dependent on the right to counsel itself," Evitts v. Lucy, 469 U.S. 387, 396 n.7 (1985), the Court finds no merit in Smith's claim that Attorney Taubenhaus's alleged failure to move for further, and discretionary, review violated his Sixth Amendment right to effective assistance of counsel.  The motion for writ of habeas corpus is therefore DENIED.

### III. Conclusion

For the reasons set forth above, Smith's § 2255 motion to vacate, set aside, or correct sentence is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of March, 2011.

                                           /s/ J. Garvan Murtha
                                           Honorable J. Garvan Murtha
                                           Senior United States District Judge